UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOLDEN WEST VEG, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES M. BARTLEY, et al., <br><br> Defendants. | Case No. 16-CV-03718-LHK <br><br> **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 33 |

Before the Court is Plaintiff Golden West Veg Inc.'s ("Golden West") renewed motion for default judgment against Defendants James M. Bartley ("Bartley") and Greenfield Produce Sales ("Greenfield"). Having considered Plaintiff's motion, the relevant law, and the record in this case, the Court hereby GRANTS Plaintiff's motion.

**I.    BACKGROUND**

   **A. Factual Background**

Golden West brings this case for violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, and for breach of contract and breach of fiduciary duty. Plaintiff is a California corporation engaged in the business of selling and shipping perishable agricultural commodities and has its principal place of business in Salinas, California. ECF No. 43

1

("FAC"), ¶¶ 1–2. Plaintiff alleges that at all times relevant to this action, Plaintiff operated under a valid PACA license number 20140205. *Id.* ¶ 16. Defendant Greenfield is a sole proprietorship of Defendant Bartley with its principal place of business in Salinas, California. *Id.* ¶ 4. Plaintiff alleges that at all times relevant to this action, Bartley and Greenfield were "insiders" who were "in a position to control the PACA trust assets that are the subject of this lawsuit." *Id.* ¶ 6.

Plaintiff alleges that Defendants were "engaged in the handling of produce in interstate and/or foreign commerce as a commission merchant, dealer and/or retailer in wholesale and jobbing quantities." *Id.* ¶ 8. Therefore, Plaintiff alleges that Defendants are "subject to the provisions of the PACA and the regulations promulgated by the Secretary of Agriculture." *Id.* Plaintiff further alleges that Defendants operated under PACA license number 20061039. *Id.* ¶ 17.

Plaintiff alleges that between January 4, 2016 and April 14, 2016, Plaintiff sold perishable agricultural commodities to Defendants. *Id.* ¶ 9. In exchange, Plaintiff alleges that Defendants agreed to pay Plaintiff $97,430.40. *Id.* Specifically, Plaintiff alleges that on or near the date of each transaction, Plaintiff forwarded to Defendants invoices for the transactions. *Id.* ¶ 10. Plaintiff has attached these invoices, of which there are 14 in total, to the FAC, and these invoices total $97,430.40. Ex. 1 to FAC. Plaintiff alleges that Defendants have paid "the partial sum of $44,226.22" but have left an "outstanding principal sum due of $53,203.78, no part of which has been paid." *Id.* Plaintiff alleges that despite shipping the produce to Defendants, and despite repeated demands that Defendants pay the amount due, Defendants "have failed and refused" to pay the remaining amount due. *Id.* ¶ 10. Plaintiff therefore seeks damages in the amount of the overdue balance, as well as "reasonable attorney's fees and costs of suit" and "interest at the highest legal rate from the date the obligation became due." *Id.* at 8–9.

**B. Procedural History**

Plaintiff filed this PACA action against Defendants on July 1, 2016. ECF No. 1. On August 24, 2016, Plaintiff filed a motion for entry of default by the Clerk. ECF No. 15. On September 27, 2016, the Clerk entered default against Greenfield, ECF No. 20, but declined to enter default against Bartley, ECF No. 20. The same day, September 27, 2016, the Court ordered

2
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

that Plaintiff file any motion for default judgment against Greenfield by October 18, 2018. ECF No. 21. The Court also ordered that if Plaintiff filed a renewed motion for entry of default and the Clerk entered default against Bartley, Plaintiff was required to file a motion for default judgment against Bartley within 21 days after the entry of default. *Id.*

On October 12, 2016, Plaintiff filed a motion to continue the deadline to file a motion for default judgment. ECF No. 23. In the motion, Plaintiff stated that after the entry of default, Bartley had contacted Plaintiff and that Plaintiff and Bartley had begun settlement discussions. *Id.* at 2. Plaintiff therefore sought a continuance in order to facilitate these settlement discussions. *Id.* On October 13, 2016, the Court granted Plaintiff's motion and continued the deadline to file a motion for default judgment until November 1, 2016. ECF No. 24.

Plaintiff then filed an amended motion for entry of default against Bartley on October 28, 2016.[1] ECF No. 25. Soon afterward, on November 1, 2016, Plaintiff filed a motion for default judgment against Greenfield. ECF No. 25. On November 2, 2016, the Clerk entered default against Bartley. ECF No. 32. On November 7, 2016, Plaintiff filed an amended motion for default judgment against both Greenfield and Bartley. ECF No. 33. On January 27, 2017, the Court denied the motions for default judgment without prejudice because the Court found that the original complaint failed to allege all elements of a PACA claim. ECF No. 42.

After the Court denied the motions for default judgment without prejudice, Plaintiff filed an Amended Complaint ("FAC") on February 10, 2017. ECF No. 43. On March 7, 2017, Plaintiff filed a motion for entry of default against Bartley individually and doing business as Greenfield Produce Sales. ECF No. 46. On March 8, 2017, the Clerk entered default against Bartley individually and doing business as Greenfield Produce Sales. ECF No. 48. On March 8, 2017,

---

[1] In a Case Management Statement filed on November 8, 2016, Plaintiff clarified that the parties had engaged in settlement discussions and Plaintiff had sent a proposed written settlement agreement to Defendants on October 20, 2016, but since that time Defendants had been unresponsive. ECF No. 37, ¶ 2. In a Case Management Statement filed on May 24, 2017, Plaintiff states that Bartley made a settlement offer to Plaintiff on May 16, 2017, but "Plaintiff does not believe a settlement will be reached." ECF No. 63 at 2. Moreover, as of the date of this order, neither Greenfield nor Bartley has made an appearance in this case, opposed or sought to vacate the entry of default, or opposed the motion for default judgment.

3
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1  Plaintiff filed a motion for entry of default against Greenfield. ECF No. 49. On March 9, 2017, the

2  Clerk entered default against Greenfield. ECF No. 51.

3  Plaintiff then filed the instant motion for default judgment against Bartley and Greenfield

4  on March 16, 2017. ECF No. 52.

## II. LEGAL STANDARD

Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. DISCUSSION

### A. Jurisdiction

4

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The Court thus begins by evaluating subject matter jurisdiction and personal jurisdiction.

### 1. Subject Matter Jurisdiction

The Court finds that the exercise of subject matter jurisdiction over this case is proper. "[A] federal court may exercise federal-question jurisdiction if a federal right or immunity is an element, and an essential one, of the plaintiff's cause of action." *Provincial Gov't of Marinduque v Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (citation omitted); *see also* 28 U.S.C. § 1331. Plaintiff asserts claims under PACA and California contract law. *See* Compl. ¶¶ 7–34. As the PACA causes of action raise federal questions, the Court may properly exercise subject matter jurisdiction over the PACA causes of action. Because the state law claim arises out of the same factual allegations as the PACA causes of action, the Court exercises supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(a).

### 2. Personal Jurisdiction

To determine the propriety of asserting personal jurisdiction over a nonresident defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003). Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does

5

not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists where a nonresident defendant's activities in the state are "continuous and systematic" such that said contacts approximate physical presence in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted). Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction where the nonresident defendant's "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

Additionally, for the Court to exercise personal jurisdiction over a defendant, the defendant must have been served in accordance with Federal Rule of Civil Procedure 4. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote omitted)).

### a. Greenfield

As to Defendant Greenfield, the Court concludes that the exercise of general jurisdiction is appropriate. Plaintiff has alleged that Greenfield's principal place of business is in Salinas, California. FAC ¶ 2. Therefore, California is a state in which Greenfield "is fairly regarded as at home" and is therefore subject to general jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). Greenfield has "substantial" and "continuous and systematic" contacts with California as well as a "physical presence" in California that support the Court's exercise of general jurisdiction. *See Schwarzenegger*, 374 F.3d at 801 (general jurisdiction exists where a defendant has "continuous and systematic general business contacts . . . that approximate physical presence

6
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

in the forum state" (citations omitted)).

Additionally, Plaintiff effected service of process upon Greenfield by serving the summons and complaint on Greenfield's sole proprietor and agent of service, Defendant Bartley. *See* ECF No. 45 (affidavit of service on Greenfield through its agent James M. Bartley). There is no indication in the record that this service was improper.

### b. James Bartley

As to Defendant Bartley, the Court concludes that the exercise of personal jurisdiction is appropriate. In the complaint, Plaintiff alleges that Defendant Bartley was at all times relevant to the complaint the sole proprietor of Greenfield, which had its principal place of business in Salinas, California. FAC ¶ 2. Operating a sole proprietorship continuously in the state of California is sufficient to establish "continuous and systematic" contacts with California that can support an exercise of general jurisdiction. *Schwarzenegger*, 374 F.3d at 801; *see also Woodworkers Tool Works v. Byrne*, 202 F.2d 530, 531 (9th Cir. 1953) (upholding a finding of personal jurisdiction based on continuous and systematic contacts with California through a sole proprietorship."

Additionally, service on Defendant Bartley was proper. The affidavit of service shows that Plaintiff effected service of process on Defendant Bartley personally on February 11, 2017. ECF No. 44. There is no indication in the record that this service was improper.

### B. Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Defendants Greenfield and Bartley is appropriate, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against Greenfield and Bartley is warranted.

#### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. Absent a default judgment, Plaintiff in this case will not obtain payment to which it is entitled for produce Plaintiff has already provided to Defendants. Thus, the first factor weighs in favor of granting default judgment.

#### 2. Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the Amended Complaint. These two factors are often analyzed together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the Complaint together.

Plaintiff brings three claims arising out of PACA and one claim for breach of contract. The Court first addresses the merits and sufficiency of Plaintiff's PACA claims and then turns to the merits and sufficiency of the breach of contract claim.

##### a. PACA Claims

Counts 2, 3, and 4 in the Complaint bring causes of action arising under PACA. Count 2 is a claim against both Defendants for enforcement of the PACA trust to require Defendants to turn over all assets in the PACA trust for the benefit of all unpaid trust beneficiaries. FAC ¶¶ 15–27. Count 3 is a claim against both Defendants for failure under PACA to pay Plaintiff promptly. *Id.* ¶¶ 28–30. Count 4 is a claim against both Defendants for breach of fiduciary duty with regard to assets in the PACA trust. *Id.* ¶¶ 31–39.

PACA protects sellers of perishable agricultural goods by requiring a merchant, dealer, or retailer of perishable produce to hold in trust proceeds from the sale of the perishable produce, and food derived from that produce, for the benefit of all unpaid suppliers. 7 U.S.C. § 499e(c)(2); *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1104-05 (9th Cir. 2001). Under PACA, "a produce dealer holds produce-related assets as a fiduciary" in the statutory trust "until full payment is made to the produce seller." *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992). "The trust automatically arises in favor of a produce seller upon delivery of produce

8
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received." *Id.*; *see also* 7 U.S.C. § 499e(c)(2).

There are five elements to a PACA cause of action:

> (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Beachside Produce, LLC v. Flemming Enters., LLC*, No. C-06-04957 JW, 2007 WL 1655554, at *2 (N.D. Cal. June 6, 2007) (citing 7 U.S.C. § 499e(c)(3), (4); 7 C.F.R. § 46.46(c), (f)).

Plaintiff satisfies the first element because Plaintiff alleges that it sold perishable agricultural commodities to Defendants. FAC ¶¶ 9, 16–17.

For the second element, PACA defines a "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6). Furthermore, "individuals associated with corporate defendants may be liable under a PACA trust theory." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). "[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets . . . may be held personally liable under the Act." *Id.* at 283. "If deemed a PACA 'dealer,' an individual is liable for his own acts, omissions, or failures while acting for or employed by any other dealer." *Id.* (citing 7 U.S.C. § 499e(a)).

Plaintiff satisfies the second element as to both Defendant Greenfield and Defendant Bartley. Plaintiff alleges that both Defendant Greenfield and Defendant Bartley were dealers under PACA because "[a]t all times relevant herein, Defendants were engaged in the handling of produce in interstate and/or foreign commerce as a commission merchant, dealer and/or retailer in wholesale and jobbing quantities." FAC ¶ 8. Specifically, Plaintiff alleges that Defendants purchased produce from Plaintiff. *Id.* ¶ 9. Plaintiff also alleges that Bartley was responsible for the daily management and control of Greenfield, and that Bartley was the "sole proprietor and

manager of defendant Greenfield." *Id.* ¶¶ 4, 32. This is sufficient to establish that Booth exercised control over Greenfield and its assets such that Bartley may be held personally liable for the PACA violations. *See Sunkist Growers*, 104 F.3d at 283 ("[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets . . . may be held personally liable under the Act.").

For the third element, courts have held that this element is satisfied where "the commodities involved are the type typically sold in interstate commerce" and where the seller involved is "the type that Congress intended to protect by implementing PACA." *Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, 2014 WL 5700695, at *3 (N.D. Cal. Nov. 3, 2014) (quoting *Oregon Potato Co. v. Seven Stars Fruit Co., LLC*, No. C12-0931JLR, 2013 WL 230984, at *5 (W.D. Wash. Jan. 22, 2013)). Plaintiff alleges that it sells its produce "in or in contemplation of interstate commerce." FAC ¶ 18. This is sufficient to satisfy the third element. *See Tom Ver LLC v. Organic All., Inc.*, 2015 WL 6957483, at *9 (N.D. Cal. Nov. 11, 2015) (holding that an allegation that plaintiff sold produce in interstate commerce was sufficient to satisfy the interstate commerce element of a PACA claim).

Plaintiff satisfies the fourth element of a PACA cause of action because Plaintiff alleges that despite repeated demands, Plaintiff has not received prompt and full payment from Defendants for the produce sold to Defendants. FAC ¶¶ 10, 29.

Finally, Plaintiff satisfies the fifth element of a PACA cause of action because Plaintiff alleges that Plaintiff preserved its trust rights by including statutory language referencing the trust on its invoices. Specifically, Plaintiff alleges that each invoice contained the following language:

> "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." FAC ¶ 21.

Plaintiff also attaches to the Amended Complaint the invoices Plaintiff sent to Defendants. *See* Ex. 1 to FAC, ECF No. 43-1. These invoices include the statutory language regarding the PACA trust.

10
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

*Id.*

Furthermore, all three of Plaintiff's PACA causes of action are cognizable claims under PACA. PACA permits persons injured by a PACA violation committed by a merchant, dealer, or broker to bring suit for damages arising from that violation. 7 U.S.C. § 499e(a)-(b). Plaintiff's Count 2, which alleges that Defendants have not maintained the PACA trust seeks enforcement of the trust, seeks redress for Defendant's failure "to maintain the trust assets and keep them available to satisfy Defendants' obligations to Plaintiff," in violation of 7 U.S.C. § 499b(4). Count 3, which alleges that Defendants failed to pay Plaintiff promptly, is permissible because "[d]ealers violate PACA if they do not pay promptly and in full for any perishable commodity in interstate commerce." *Sunkist Growers*, 104 F.3d at 282 (citing 7 U.S.C. § 499b(4)). Count 4 alleges that Defendants breached their fiduciary duty to Plaintiff and interfered with the PACA trust assets. These claims are cognizable because "[a]n individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." *Sunkist Growers*, 104 F.3d at 283. Thus, a PACA trust "imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier." *Id.*

Because Plaintiff has sufficiently alleged the elements for Plaintiff's three PACA causes of action, the Court concludes that Plaintiff has sufficiently stated claims against Defendants Greenfield and Bartley for enforcement of the PACA trust, for violation of PACA by failing to pay promptly, for breach of fiduciary duty to the PACA trust beneficiary and for interference with PACA trust assets.

### b. Breach of Contract

Count 1 of the Amended Complaint is for breach of contract against both Defendants. Compl. ¶¶ 7–14. The elements of breach of contract under California law are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen'l Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Plaintiff alleges that Plaintiff had a contract with Defendants for the purchase of produce in exchange for

11
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1  $97,430.40, that Plaintiff performed by delivering the produce to Defendants, that Defendants breached the contracts by not paying for the produce, and that Plaintiff has been damaged by Defendants' failure to pay. Compl. ¶¶ 9–10. This is sufficient to state a claim for breach of contract.

Because Plaintiff has sufficiently stated claims for violations of PACA and for breach of contract, the second and third *Eitel* factors weigh in favor default judgment.

### 3. Fourth *Eitel* Factor

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594-JSW, 2007 U.S. Dist. LEXIS 100237, at *33 (N.D. Cal. Mar. 22, 2007), *adopted by* 2007 WL 1545173 (N.D. Cal. May 29, 2007). Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *See id.*

Plaintiff's motion for default judgment seeks to recover $53,203.78 for unpaid produce, $10,483.39 in prejudgment interest, $10,428.00 in attorney's fees, and $659.85 in costs. Although not insubstantial sums, the amount that Plaintiff requests is reasonable in light of the fact that Plaintiff shipped produce to Defendants a year ago for which Plaintiff still has not received full payment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Defendants have failed to make an appearance in this case. The Court therefore takes the allegations in the Amended Complaint as true. *Fair Hous.*, 285 F.3d at 906. Given that posture, the Court finds that disputes of material facts are unlikely.

12
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. A summons was issued for both Defendants on July 28, 2016, ECF Nos. 10–11, and returned executed on July 29, 2016, ECF Nos. 43–44. Nothing in the record before the Court indicates that the service as to Defendants was improper. Defendants, however, have not appeared in this case. Nothing before the Court suggests that Defendants' failure to appear was the result of excusable neglect. Indeed, Plaintiff has indicated that Defendants are aware of the instant case and have engaged in settlement discussions. In these circumstances, it appears that Defendants have no excusable reason to fail to appear in the instant case. ECF No. 37, at 2.

The fifth and sixth *Eitel* factors thus favor entry of default judgment.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Although Defendants are apparently aware of the instant case, Defendants have not made an appearance nor challenged the entry of default against them. The likelihood of the case proceeding to a resolution on the merits is unlikely. The Court finds that the seventh *Eitel* factor is outweighed by the other six factors that favor default judgment. *Id.* at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment). The Court therefore finds that default judgment is appropriate in this case.

### C. Damages

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951

F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Intern., Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004). To establish Plaintiff's requested damages, Plaintiff has provided supporting declarations and invoices showing the original amounts due for the produce shipped by Plaintiff. *See* Ex. 1 to FAC. Plaintiff has provided additional declarations and timesheets supporting Plaintiff's request for attorney's fees and costs. *See* ECF Nos. 28, 54.

Plaintiff requests damages for the invoice value of the unpaid produce, interest on the invoice value of the unpaid produce, and attorney's fees and costs.

### 1. Unpaid Produce

Under PACA, a dealer who violates its provisions "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). Plaintiff has attached invoices to the FAC showing that Plaintiff shipped produce with an invoice value of $97,430.40 to Defendants. Ex. 1 to FAC. According to the FAC, Plaintiff has received partial payment in the amount of $44,226.22. FAC ¶ 10. The Court finds that Plaintiff's invoices are sufficient to establish Plaintiff's entitlement to $53,203.78 for the remaining invoice value of the unpaid produce.

### 2. Interest, Attorney's Fees, and Costs

The Ninth Circuit has held that, in addition to the invoice value of unpaid produce, PACA permits a plaintiff to recover prejudgment interest as well as attorney's fees and costs if the contract between the plaintiff and the defendant stated that the defendant would be liable for interest, attorney's fees, and costs. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224-25 (9th Cir. 2002); *see also Greenfield Fresh*, 2014 WL 5700695, at *4-5 (holding that a PACA plaintiff was entitled to prejudgment interest, attorney's fees, and costs based on the contract between the plaintiff and the defendant).

In the instant case, Plaintiff alleges that its contract with Defendants provided that Defendants would be liable for interest at 18% APR on any overdue payments as well as for attorney's fees and costs associated with recovering any overdue payments. To support Plaintiff's

14

Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

allegation, Plaintiff points to the invoices Plaintiff sent to Defendants, all of which include the following language:

> Interest shall accrue on any past due account balance at the rate of 1.5% per month (18% APR). In the event a collection action becomes necessary, Buyer agrees to pay all costs of col[l]ection, including attorney's fees. Ex A to FAC.

The Ninth Circuit in *Middle Mountain* declined to reach the issue of whether invoices were sufficient to establish a contractual right to interest, attorney's fees, and costs and instead remanded the issue to the district court. *See* 307 F.3d at 1225. In other contexts, however, the Ninth Circuit has held that terms in an invoice for the sale of goods are included in the parties' contract. *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 976 (9th Cir. 1996) (awarding concrete suppliers prejudgment interest based on the terms in the supplier's invoices). This Court and other courts in this District have determined that contractual language on invoices is sufficient in PACA cases to establish contractual obligations, including obligations to pay prejudgment interest, attorney's fees, and costs. *See, e.g., Tom Ver LLC v. Organic All., Inc.*, 2015 WL 6957483, at \*12; *Greenfield Fresh*, 2014 WL 5700695, at \*4-5 (language on invoices sufficient to establish contractual right to collect prejudgment interest, attorney's fees, and costs); *C.H. Robinson Co.*, 2007 WL 39311, at \*4 (same). The Court concludes that Plaintiff's invoices are sufficient to establish that Plaintiff is entitled to collect prejudgment interest, attorney's fees, and costs from Defendants. The Court therefore considers Plaintiff's requests for interest, attorney's fees, and costs in turn.

### a. Interest

Plaintiff requests $10,483.39 in prejudgment interest. In support of this request, Plaintiff provides a spreadsheet calculating interest at 1.5% per month (18% APR) as provided for in Plaintiff's invoices. See ECF No. 54, Ex. 2. This spreadsheet shows accrued interest of $10,483.39. The Court finds that Plaintiff's calculations are sufficient to establish Plaintiff's entitlement to $10,483.39 for interest on the invoice value of the unpaid produce.

Plaintiff also requests that the Court order post-judgment interest at the rate of 18%, rather than the interest rate specified in 28 U.S.C. § 1961. Under § 1961, "[i]nterest shall be allowed on

15

Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

any money judgment in a civil case recovered in a district court," and the interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield" for the week preceding the date of judgment. 28 U.S.C. § 1961(a).

Despite the mandatory language of § 1961, Plaintiff argues that "the equities of [this] particular case" demand a rate of 18%. ECF No. 52, at 14. However, the cases that Plaintiff cites in support of this argument provide only that courts have discretion to determine *pre-judgment* interest in PACA claims. *See Columbia Brick Works, Inc. v. Royal Insurance Co.*, 768 F.2d 1066, 1071 (9th Cir. 1985) ("We have determined that the measure of interest rates prescribed for postjudgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for prejudgment interest unless the equities of a particular case demand a different rate."); *Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862, 871 (9th Cir. 2001) ("The federal prejudgment interest rate applies to actions brought under federal statute . . . unless the equities of the case require a different rate."); *Andrew Smith Co. v. Paul's Pak, Inc.*, 2010 U.S. Dist. LEXIS 122023, at *22 (N.D. Cal. 2010) ("The court therefore awards . . . damages, including prejudgment interest."); *Delta Pre-Pack Co. v. Gitmed*, 2009 U.S. Dist. LEXIS 89727, at *3 (E.D. Cal. 2009) ("The court has discretion to determine prejudgment interest in PACA claims."). Plaintiff has cited no authority for the proposition that courts have discretion to change the *post-judgment* interest rate dictated by 28 U.S.C. § 1961. Indeed, this position is contrary to the mandatory language of § 1961, which states that interest "*shall* be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield." 28 U.S.C. § 1961(a) (emphasis added). Therefore, the Court finds that Plaintiff is entitled to post-judgment interest only at the rate dictated by 28 U.S.C. § 1961.

### b. Attorney's Fees and Costs

As previously discussed, Plaintiff has a contractual right to recover attorney's fees from Defendants. Where a plaintiff has a contractual right to attorney's fees, the plaintiff has a right under PACA to enforce the right to attorney's fees as part of the perishable agricultural

16
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

commodities contract. *Middle Mountain Land*, 307 F.3d at 1224-25. The Court stated in its January 27, 2017 Order Denying Motions for Default Judgment Without Prejudice that in any renewed motions for default judgment, "the Court will not grant attorney's fees for work on motions and pleadings that the Court has found deficient." ECF No. 42, at 11.

Courts in the Ninth Circuit calculate attorney's fees using the lodestar method, whereby a court multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted). Generally, "the relevant community is the forum in which the district court sits." Camacho, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases...are satisfactory evidence of the prevailing market rate." *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Plaintiff submitted a declaration and timesheets from Plaintiff's counsel R. Jason Read, ECF No. 54, which incorporates by reference portions of the declaration and timesheets submitted by Jing Tong, ECF No. 28. The timesheets submitted include hours worked by Read, Tong, and attorney Patricia J. Ryan. The hourly rate billed by Tong in this matter was $295.00 per hour, and the hourly rate billed by Read and Ryan was $395.00 per hour. ECF No. 28, at 4; ECF No. 54, at 6. Plaintiffs argue that these rates "are competitive and reasonable among the law firms that have expertise in PACA matters." ECF No. 54, at 6.

This Court has previously held that an hourly rate of $395.00 is reasonable for an attorney with significant PACA experience. *See Mission Produce, Inc. v. Organic All., Inc.*, 2016 WL 1161988, at *11 (N.D. Cal. Mar. 24, 2016). This Court has also approved rates of $295.00 per hour and higher for less experienced attorneys specializing in PACA litigation. *See Greenfield Fresh*, 2015 WL 1160584, at *4 (N.D. Cal. March 13, 2015) (finding that attorney's fees ranging

17

Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

from $275 per hour to $370 per hour were reasonable in a PACA case); *C.H. Robinson Co. v. Marina Produce Co.*, 2007 WL 39311, at *4 (N.D. Cal. Jan. 4, 2007) (finding that $250 per hour was reasonable for attorney's fees in a PACA case); *Sequoia Sales, Inc. v. P.Y. Produce, LLC*, 2011 WL 3607242, at *9 (N.D. Cal. July 29, 2011) (finding attorney's fees of $285 per hour to $350 per hour were reasonable in a PACA case). In light of these cases and the declarations submitted by Read and Tong, the Court concludes that Plaintiff's requested rates for Read, Tong, and Ryan are reasonable.

The Court has reviewed counsel's declarations and timesheets, which contain descriptions of each activity performed and identify time worked in increments of hundredths of an hour, and finds them adequately detailed and related to the work required for this litigation. Consistent with the Court's January 27, 2017 Order, Plaintiffs no longer request "attorney's fees for work on motions and pleadings that the Court has found deficient." ECF No. 42, at 11. Specifically, the declaration of R. Jason Read states that Plaintiffs do not request compensation for certain work reflected on the timesheets submitted along with the Tong declaration because that work involved drafting the initial complaint and drafting and revising the motion for default judgment that the Court denied without prejudice. ECF No. 54, at 4–5. Read states that he "believe[s]" that Plaintiffs have removed all work related to pleadings and motions that the Court found deficient.

However, the Court has reviewed the submitted timesheets and finds that Plaintiffs have not identified all billed hours related to such work. Specifically, the Court finds that Plaintiffs are not entitled to compensation for the following billing entries:

- July 1, 2016: 0.70 hours ($276.50) billed by Read for work including "follow up with legal assistant regarding status of filing complaint and arranging service of process."
- October 25, 2016: 0.50 hours ($197.50) billed by Read for work including "discussing motion for entry of default judgment and related issues."
- October 26, 2016: 1.50 hours ($442.50) billed by Tong for work "regarding drafting the declaration in support of the [motion for] default judgment."
- October 27, 2016: 0.80 hours ($316.00) billed by Read for work including "discussing . . .

18
Case No. 16-CV-03718-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1  strategies for motion for entry of default judgment."

2  - October 31, 2016: 1.20 hours ($474.00) billed by Read for work including "[r]eview and
3    comment on Motion for Entry of Default Judgment."

Therefore, the Court does not grant fees for this work, which totals $1,706.

As to total hours, counsel submitted itemized billing records that show, after accounting for the above corrections, a total of 26.4 compensable billed hours. *See* ECF Nos. 28-1, 54-1. Counsel described in detail the work corresponding to each timesheet entry. *Id.* Based on this work, the Court awards Plaintiff a total of $10,428.00.

Plaintiff also requests costs of $659.85. See ECF No. 28, ¶ 17. Plaintiff has included a bill of costs that provides adequate evidence of these costs. ECF No. 28-2. The Court finds these costs reasonable and therefore awards $659.85 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment against Defendant James M. Bartley and Defendant Greenfield Produce Sales. Defendants shall pay Plaintiff a total of $74,775.02, which consists of $53,203.78 for the remaining invoice value of the unpaid produce, $10,483.39 in prejudgment interest, $10,428.00 in attorney's fees, and $659.85 in costs. Plaintiff is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

Dated: May 30, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge